IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tony Marks Racing, LLC,                                      Case No. 3:14CV1568

        Plaintiff

     v.                                                         **ORDER**

VR-12, LLC, et al.,

        Defendants

     This is a diversity suit between a corporate owner of a racing car, plaintiff Tony Marks Racing (TMR) and the producer – defendant VR–12, LLC – and distributor – defendant FREEZETONE Products, Inc. – of a radiator coolant additive.

     The gravamen of TMR's complaint is that the defendants breached an oral sponsorship agreement whereby defendants would pay TMR $50,000 per race for nineteen races and pay TMR a $4.00 royalty for any VR-12 sold in 2011. In exchange, TMR agreed to place VR-12 decals on its Number Twelve race car and advertise VR-12 as its title sponsor.

     Pending is defendants' motion under Fed. R. Civ. P. 12(b)(2) to dismiss for want of personal jurisdiction (or, in the alternative, to transfer this case to the Southern District of Florida, the defendants' place of residence). (Doc. 20). For the following reasons, I deny the motion and decline to transfer the case.

**Background**

TMR is an Ohio limited liability company whose sole member, Tony Marks, resides in Wood County, Ohio. Marks owns TMR and Tony Marks Trucking (TMT), a separate entity that filed for bankruptcy in 2013.

TMR is a racecar company whose Number Twelve car competes in the Automobile Racing Club of America (ARCA) racing series. ARCA, an Ohio corporation, controls the race series, and must approve sponsorship deals such as the one alleged between the parties here.

Defendant VR-12 LLC is a Florida limited liability company, with its sole member's residence in Florida. Defendant FREEZETONE is a Florida corporation with its principal place of business in Florida. Defendant Luis M. Latour, President and owner of VR-12 LLC, and is President, Treasurer, and owner of FREEZETONE, likewise is a resident of Florida.

In January, 2011, Latour came to Ohio to negotiate and enter into a sponsorship agreement with Tony Marks to have VR-12 LLC and FREEZETONE sponsor the TMR Number Twelve race car throughout the ARCA 2011 race season. During the negotiations, Latour told Marks that he was personally behind TMR for the long haul.

Around this time, there was also a discussion between TMT and defendants where TMT would warehouse and distribute VR-12 in exchange for selling VR-12 at a markup and payment for costs of warehousing and distributing VR-12 in Ohio.

Latour states he came to Ohio to visit Marks only to talk about a deal between FREEZETONE and TMT and not a sponsorship arrangement, as plaintiff alleges.

The contract, according to plaintiff, bound defendants to pay TMR $50,000 per race for the full nineteen race ARCA 2011 season. Defendants also agreed to pay TMR a royalty of $4/case of VR-12 sold throughout the 2011 season. In exchange, TMR agreed to decal its

Number Twelve race car with VR-12 as its title sponsor and actively promote the VR-12 radiator coolant additive throughout the 2011 season.

Plaintiff's Number Twelve car drove with the VR-12 logo, and the driver wore a uniform featuring the VR-12 logo.

Defendants also appeared with plaintiff at a promotional event in Florida in February, 2011, where Latour, Marks, and the TMR driver, wearing a VR-12 hat and uniform, sat at a podium together promoting their new relationship. A promotional video the defendants made to promote VR-12 featured the TMR Number Twelve car adorned with its VR-12 logo.

Defendants have other relationships in Ohio. Defendants currently sponsor ARCA. In addition, in April, 2011, defendants placed a billboard advertising VR-12 at the Toledo Speedway. Defendants also sponsored the ARCA Toledo Speedway race in 2011. Defendants sold VR-12 in Ohio through JEGS, an Ohio automotive products retailer company.

According to the complaint, defendants made only one $50,000 payment to TMR, and no royalty payments. This prompted TMR to file suit in this court in July, 2014.

On January 5, 2015, plaintiff filed an amended complaint alleging three counts against defendants: 1) breach of contract; 2) accounting and royalty payment; and 3) promissory estoppel. (Doc. 19).

On January 28, 2015 defendants filed the pending motion to dismiss for lack or personal jurisdiction or to transfer to the Southern District of Florida.

**Discussion**

Since diversity of citizenship is the basis for this court's subject matter jurisdiction, the substantive law of Ohio is dispositive. *Welsh v. Gibbs,* 631 F.2d 436, 440 (6th Cir. 1980).

In Ohio, personal jurisdiction is proper if: 1) the State's long arm statute authorizes jurisdiction; and 2) the exercise of jurisdiction is consistent with the due process requirements of the United States Constitution. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996).

In response to a Rule 12(b)(2) motion, plaintiff bears the burden of establishing a *prima facie* case as to both elements. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.,* 91 F.3d 790, 793 (6th Cir. 1996).

In ruling on the motion, I may: 1) make a determination based on written submissions and affidavits alone; 2) permit discovery in aid of the motion; or 3) conduct an evidentiary hearing. *Serras v. First Tennessee Bank Nat'l Assoc.*, 875 F.2d 1212, 1214 (6th Cir. 1989). When I rule on a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) without an evidentiary hearing, I must "consider the pleadings and affidavits in a light most favorable to the plaintiff[.]" *CompuServe, supra,* 89 F.3d at 1262.

### 1.  The Ohio Long Arm Statute

Ohio's law governing personal jurisdiction states that:

(A)  A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state; [or]

(2) Contracting to supply services or goods in this state[.]

O.R.C. § 2307.382(A).

Ohio courts have stated that the "bare wording of the statute" does not provide strong guidelines, and courts must engage in "a case-by-case determination." *Ricker v. Fraza/Forklifts of Detroit,* 160 Ohio App. 3d 634 (2005). In *PTG Logistics, LLC v. Bickel's Snack Foods, Inc.*,

4

196 F. Supp. 2d 593, 600 (S.D. Ohio 2002), the court stated the factors a court is to consider in determining whether a defendant conducted business in this State:

> Although the Court may consider such factors as whether the defendant was ever physically present in the forum state, which party initiated contact or solicited business from the other, whether the defendant was the buyer or seller, and whether negotiations between the parties resulted in an actual contract, the test is ultimately whether the defendant 'chose to deal with' the plaintiff.

TMR argues defendants have transacted business in Ohio by reaching out to plaintiff about a possible sponsorship, and then coming to Ohio to negotiate the agreement. Plaintiff also states that part of the sponsorship agreement was for nineteen payments of $50,000, and defendants sent its only payment to TMR in Ohio.

Defendants argue they never transacted any business in Ohio. Defendants assert that there was never a contract agreed to between them and TMR or TMT. Defendants also state ARCA has a principal place of business in Michigan, so any dealings between them and ARCA are not with an Ohio company.

Here, defendants chose to deal with plaintiff when they agreed to sponsor a TMR racecar. Furthermore, Latour was at least twice present in Ohio, defendants solicited business from plaintiff, and the parties agreed in Ohio to enter into a contract, all of which goes well beyond the low standard of "choosing to deal with" the plaintiff.

Just as in *Hammill Mfg. Co. v. Quality Rubber Prods., Inc.,* 82 Ohio App. 3d 369, 374 (1992), where the court held that a corporate nonresident transacted business in Ohio where it "initiates, negotiates a contract, and through the course of dealing becomes obligated to make payments to an Ohio corporation[,]" the defendants here initiated contact with TMR, negotiated a contract, and obligated themselves to make payments based on the contract, even making one payment.

In *Costaras v. NBC Universal, Inc.*, 409 F. Supp. 2d 897, 900 (N.D. Ohio 2005), in contrast, the plaintiffs had approached the defendants, who "never came to Ohio and all negotiations and conversations took place somewhere else." The facts here are entirely different: defendants, through Latour, did business in Ohio when, after he initiated contact, he came to Ohio on more than one occasion, negotiated the oral contract while in Ohio, and sent a payment to Ohio. Jurisdiction exists under the Ohio long arm statute.

Having resolved the first inquiry into personal jurisdiction, I now consider whether exercise of jurisdiction over defendants satisfies the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## 2. Constitutional Due Process Requirement

In *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968), the Sixth Circuit developed a three-part test for determining the constitutional reach of personal jurisdiction. Under this test: 1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; 2) the cause of action must arise from the defendant's activities there; and 3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.* at 381.

### A. Purposeful Availment

A defendant purposefully avails himself of the opportunity of acting in Ohio "if he should have reasonably foreseen that the transaction would have consequences in that state." *Id.*, at 382-83. A plaintiff establishes this element by demonstrating either: 1) defendants' connections with Ohio are substantial or significant enough that defendants should reasonably anticipate being hauled into an Ohio court; or 2) defendants created "continuing obligations" between themselves

6

and residents of the forum. *Douglas v. Modern Aero, Inc.*, 954 F. Supp. 1206, 1212 (N.D. Ohio 1997).

Here, defendants entered into an Ohio contract with an Ohio resident that defendants would perform entirely in Ohio. Defendants advertised in Ohio when they sponsored an ARCA race based in Toledo and put up a billboard at the Toledo Speedway, thereby promoting VR-12 in the Toledo area. Defendants also sold their products to JEGS — a local retailer of automotive products. Defendants' connections with Ohio are substantial enough to make them reasonably anticipate "being hauled into an Ohio court."

The defendants also come within the second prong of the purposeful availment test, because plaintiff alleges that the contract creates a continuing obligation between the defendants and the plaintiff — to make payments throughout the year in exchange for sponsorship of the car. Defendants also agreed to pay plaintiff a royalty fee for any VR-12 sold in Ohio during the contract.

To exercise personal jurisdiction over the defendants, I must find their contacts with Ohio are not "random, fortuitous, or attenuated." *Marrik Dish Co., LLC v. Wilkinson CGR Cahaba Lakes, LLC*, 835 F. Supp. 2d 449, 456 (N.D. Ohio 2011). Defendants' contacts with Ohio were certainly not random, fortuitous or attenuated. Instead, defendants sought out Ohio as a new market to sell their product, making their contact with the state planned and purposeful.

In addition to the contract with TMR, defendants are in a contract with ARCA, an Ohio corporation for sponsorship. Defendants also sell their product in JEGS, an Ohio based retailer.

"'Continuing obligations' imply contacts of greater intensity and duration than a 'one-shot deal.'" *Special Aviation Sys., Inc. v. Aircraft Structures Int'l Corp.*, 323 F. Supp. 2d 839, 845 (N.D. Ohio 2004).

The defendants' relationship with TMR was more than a one-shot deal. The contract called for payments over the course of the entire nineteen race season. In addition, Latour told Marks he was behind TMR for the long haul, meaning he wanted a continuing obligation. Along with just sponsoring cars, part of the deal was to sell VR-12 in Ohio, where $4.00 from any sale during the year would go to TMR.

FREEZETONE purposely sent its product, VR-12, into Ohio to be sold here. Latour purposely came to Ohio to negotiate a contract with an Ohio company, TMR. VR-12 LLC purposely contracted with TMR to sponsor their racecar, which raced in Ohio. All these connections to Ohio were the result of actions that defendants took themselves to have their product in Ohio. Defendants are contemplating repeated dealings with Ohio over a long period of time.

### B. Claim Arises out of Defendants' Activities with the Forum State

"When the cause of action is for breach of contract and the defendant's activities in the forum state were connected with that contract, the second prong of the *Southern Machine* test is easily met." *PTG Logistics, supra*, 196 F. Supp. 2d at 601.

TMR is suing for breach of contract, a contract that Latour came to Ohio to negotiate, and brought defendants into Ohio. Defendants' relation to Ohio comes from the contract to sponsor TMR in the 2011 season.

"[I]f the cause of action is for breach of that contract, as it is here, then the cause of action naturally arises from the defendant's activities in Ohio." *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).

As in *Cole*, the cause of action is for breach of contract, therefore, the cause of action naturally arises from the defendants' activities in Ohio. Thus, defendants' contacts in Ohio relate to this controversy's operative facts.

### C. Reasonableness of the Exercise of Personal Jurisdiction

If a plaintiff meets the first two elements of a *prima facie* case, which TMR does here, then there is an inference that reasonableness also exists. *CompuServe, supra*, 89 F.3d at 1268. There are several relevant factors to determining the reasonableness prong, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id*.

Although defendants argue the Southern District of Florida is the better location for the case, I find it is reasonable to adjudicate it here. Latour has shown his ability to come to Ohio on at least two occasions, so it would not be unreasonably burdensome for him to come to Ohio to defend the claim against him. Ohio has a strong interest in making sure its residents get the full benefit of their bargains. Plaintiff has a clear interest in obtaining relief. Although Florida also has an interest in this dispute, because the defendants reside there, it does not outweigh the other factors pointing to Ohio as the proper forum in which to resolve the dispute, because the parties negotiated the contract in Ohio and it they performed in Ohio.

### 3. Evidentiary Hearing

"[I]f the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution, it may conduct a preliminary evidentiary hearing." *Welsh, supra*, 631 F.2d at 439.

Defendants have not asked for an evidentiary hearing; in any event, no hearing is necessary. First, the evidence is undisputed that defendants transacted business in Ohio.

Defendants contracted with TMR, whose sole member resides in Ohio. Defendants contracted with ARCA, an Ohio corporation, to sponsor a race and place a billboard in Toledo. The undisputed facts therefore show jurisdiction is proper under the Ohio long arm statute.

Second, the undisputed evidence suffices to find plaintiff's claim arises out of defendants' activities in Ohio. Defendants do not dispute: 1) they paid TMR $50,000; 2) TMR's Number Twelve race car competed during the 2011 ARCA season with a VR-12 decal; and 3) Latour came to Ohio to negotiate business with Marks.

This evidence permits me to infer – and I so find – the parties were performing in accordance with a contract they had negotiated and intended to perform in Ohio. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

## Conclusion

It is, accordingly,

ORDERED THAT defendants' motion to dismiss for lack of personal jurisdiction, or in the alternative, motion to transfer (Doc. 20) be, and the same herby is, denied.

The Clerk shall forthwith schedule a status/scheduling conference; not later than one week prior to the conference the parties shall submit a proposed schedule for further proceedings.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge